UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| H&R CONVENTION AND CATERING CORP. and QUINN RESTAURANT GROUP, | **MEMORANDUM, ORDER AND JUDGMENT** |
| Plaintiffs, | 12-CV-1425 |
| – against – | |
| MARIANNA SOMERSTEIN, STUART SOMERSTEIN, SOMERSTEIN CATERERS OF LAWRENCE, INC. PENSION PLAN, CAPITAL ONE, N.A., and PENSION BENEFIT GUARANTY CORPORATION, | |
| Defendants. | |

**JACK B. WEINSTEIN, Senior United States District Judge:**

For plaintiffs H&R Convention and Catering
Corp. and Quinn Restaurant Group:

> Gerald P. Wolf, Esq.
> The Wolf Law Group, P.C.
> Mineola, New York

> William J. Garry, Esq.
> Harris Beach PPLC
> Uniondale, New York

For defendant Marianna Somerstein:

> Marianna Somerstein (pro se)
> Costa Rica

For defendants Somerstein Caterers of
Lawrence, Inc. Pension Plan and Pension
Benefit Guaranty Corp.:

> John H. Ginsburg, Esq.
> Pension Benefit Guaranty Corp.
> Washington, DC

For defendant Stuart Somerstein:

> Stuart Somerstein (pro se)
> Costa Rica

For defendant Capital One, N.A.:

> Jennifer L. Silvestro, Esq.
> Melville Law Center
> Melville, New York

> G. Robert Collier, Jr., Esq.
> Monroe, Louisiana

**Table of Contents**

I.    Introduction .................................................................................................. 2
II.   Facts ............................................................................................................. 5
III.  Procedural History ....................................................................................... 9
IV.   No Cognizable Claim ................................................................................. 12
   A.   No Statutory Standing to Pursue ERISA Fiduciary Duty Claims ................... 12
   B.   Unavailability of Contribution Claim ............................................................ 14
   C.   Jurisdiction Not Exercised Over Request for Declaratory Relief ................... 17
      1.   Discretionary Nature of Declaratory Judgment Jurisdiction ..................... 17
      2.   Availability of Special Statutory Proceeding ........................................... 19
      3.   Interference with Ongoing State Court Action .......................................... 22
      4.   Jurisdiction Denied for Declaratory Judgment Action .............................. 24
   D.   Jurisdiction Not Exercised Over State Law Claims ........................................ 24
V.    Conclusion .................................................................................................. 25

**I.  Introduction**

H&R Convention and Catering Corporation ("H&R") alleges it was cheated when it bought Quinn Restaurant Corporation ("Quinn") in 2009. It had bargained for the former shareholders of Quinn—defendant Marianna Somerstein and non-party Daniel Culnen—and Somerstein's husband, defendant Stuart Somerstein, to terminate a pension plan sponsored by Quinn (the "Plan") and make payments to fund the Plan's remaining obligations within ninety days of the deal's closing.

H&R's grievance—which it now shares with Quinn—is that the former shareholders and Mr. Somerstein breached. They have left, according to H&R and Quinn ("Plaintiffs"), the Plan depleted of resources and Quinn (and its corporate parent, H&R) facing potential liabilities to the Plan and possible civil penalties from the United States Department of Labor. Cross-claims for breach of contract and issues related to the sale of Quinn—filed several months before the initiation of this lawsuit—are currently being litigated by all but one of the parties to this litigation in a New York State court. *See Marianna Somerstein, Stuart Somerstein, and Daniel*

*Culnen v. H&R Convention & Catering Corp., Quinn Restaurant Corporation, and Harendra Singh*, No. 26896/2011 (N.Y. Sup. Ct. Queens Cty.) (motion to intervene by Pension Benefit Guaranty Corporation pending).

Because it lacked adequate funds to make beneficiary payments, the Plan was terminated by another judge of this court in an order retroactive to February 29, 2012. *See* Order & Judgment upon Failure to Show Cause, *Pension Benefit Guaranty Corp. v. Quinn Restaurant Corp.*, No. 12-CV-2881 (E.D.N.Y. June 14, 2012) ("Termination Order and Judgment"), ECF No. 10. The federal government's wholly-owned Pension Benefit Guaranty Corporation ("PBGC") is now statutory trustee to the Plan. Levied upon Quinn by the PBGC is a lien of nearly $1.9 million based upon the Plan's liabilities. Plaintiffs have not satisfied the lien, and no enforcement action has been initiated by the PBCG or the United States Department of Labor.

Plaintiffs sue under various provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., and New York State common law. Following voluntary dismissal of some parties, the remaining defendants are: Mrs. Somerstein, a United States citizen, who resides in Costa Rica; Mr. Somerstein, a United States citizen, who resides in Costa Rica; the Plan itself, Somerstein Caterers of Lawrence, Inc. Pension Plan; the former Plan trustee, Capital One, N.A., whose principal place of business is Virginia; and the Plan's current trustee, the PBGC. *See* Complaint, Mar. 22, 2012, ECF No. 1 ("Compl."), ¶¶ 2-9.

Both Somerstein Caterers of Lawrence, Inc. ("SCL"), a now-defunct New York corporation formerly controlled by the Somersteins and which once served as administrator of the Plan, and Daniel Culnen, a resident of New York and former shareholder of SLC who authorized the sale of Quinn, have been voluntarily dismissed by Plaintiffs. *See* Stip. of Discontinuance, Mar. 25, 2013, ECF No. 89.

Plaintiffs allege that the Somersteins breached their fiduciary duties to the Plan prior to H&R's acquisition of Quinn, and that the other defendants knowingly allowed them to do so. Plaintiffs sue the PBGC on a theory that it has breached a fiduciary duty to the Plan by continuing to make benefit payments to the Somersteins. Sought is an injunction halting the PBGC from issuing new payments to the Somersteins.

Plaintiffs also seek declaratory relief absolving them of any requirement to comply with minimum funding requirements set by ERISA and of any potential penalties it may be assessed by the United States Department of Labor. They seek declarations, pursuant to ERISA, that they are not "responsible for any . . . penalties under ERISA attributable to the misfeasance and/or malfeasance of the Somersteins and/or any other Defendant," and that they are not "responsible . . . for any [minimum] funding requirements in connection with" the Plan. Compl. ¶ 46. Also pursued by Plaintiffs are state common law claims against the Somersteins. *Id.* ¶¶ 60-61, 70-71.

The PBGC and Capital One move to dismiss Plaintiffs' fiduciary duty claims for lack of statutory standing under ERISA. Civil actions to enforce ERISA may only be brought by an exclusive class: plan participants, plan fiduciaries, plan beneficiaries, and the United States Secretary of Labor. *See* 29 U.S.C. § 1132. Because Plaintiffs lack authority to bring claims pursuant to ERISA or to initiate a suit for contribution, their claims for breach of fiduciary duty are dismissed.

Although no defendant has moved to dismiss Plaintiffs' declaratory judgment actions, the court exercises its discretion to decline jurisdiction over a request for declaratory relief. Plaintiffs have not demonstrated an inability to avail themselves of ERISA's comprehensive scheme for claiming the very same redress sought from this court; nor is interference with the

ongoing state court litigation warranted. Finally, because there is an absence of complete diversity among the parties, the court is without power to decide this case on diversity grounds. It declines to exercise supplemental jurisdiction over any state law claims.

All of the partial motions to dismiss are granted. The fact that no defendant has requested dismissal of the *entire* case does not preclude total dismissal. There is no cognizable claim by any named plaintiff against any named defendant. *See* Part IV, *infra*. What Plaintiffs have tried to do is convert an entrepreneurial dispute about money due from the sale of a business into an ERISA-type litigation fashioned to protect workers' retirement benefits. Congress carefully designed ERISA to prevent this procedural abuse. The case is dismissed in its entirety.

## II. Facts

As alleged in the complaint, whose factual allegations are accepted as true, in March 2009, H&R acquired from Mrs. Somerstein and Culnen all of the outstanding stock in Quinn. *See* Compl. ¶ 35.

The Plan, of which Quinn was a contributing sponsor, was established in 1980 by SCL, then controlled by the Somersteins. *See id.* ¶¶ 2, 14; *see also* PBGC Renewed Mot. for Partial Dismissal, Nov. 30, 2012, ECF No. 68 ("Renewed Mot."), ¶¶ 1-3. It is a defined-benefit plan governed by ERISA and guaranteed by the PBGC. *See* Renewed Mot. ¶ 2. Among the Plan's beneficiaries are defendants Marianna and Stuart Somerstein. *See* Compl. ¶ 41; Renewed Mot. ¶¶ 42-45.

The Somersteins were co-trustees of the Plan until 1998, when they were convicted of various federal crimes. *See* Compl. ¶¶ 20-21; Judgment as to Marianna Somerstein, *United States v. Somerstein, et al.*, 96-CR-657 (E.D.N.Y. July 24, 1998), Dkt. No. 278; Judgment as to

Stuart Somerstein, *United States v. Somerstein, et al.*, 96-CR-657 (E.D.N.Y. Aug. 5, 1998), Dkt. No. 291.

Mrs. Somerstein was convicted of crimes related to underreporting employee numbers to union-sponsored vacation, welfare and pension plans. *See* Reply to Renewed Mot., Feb. 20, 2013, ECF No. 81 ("Reply"), at 10. She was sentenced to six months of home detention and three years of probation. *Id.* Mr. Somerstein was convicted on the same charges, as well as one count of theft from the Plan. *Id.* He was sentenced to a term of imprisonment of twenty-seven months followed by three years of probation. *Id.*

Following the Somerstein's convictions, North Fork Bank was appointed trustee of the Plan by court order. *See* Compl. ¶ 22; Order, *United States v. Somerstein, et al.*, 96-CR-657 (E.D.N.Y. Oct. 9, 1998), Dkt. No. 328. The bank was later acquired by defendant Capital One, N.A., which was the Plan's trustee until February 2012. Plaintiffs allege that, despite her conviction, Mrs. Somerstein continued to act as a fiduciary to the Plan—for example, by providing the Plan's actuary and trustee with instructions. *See* Compl. ¶¶ 22-34. There are no allegations that Mr. Somerstein remained a fiduciary following his conviction.

From the Stock Purchase Agreement and Closing Agreement governing H&R's acquisition of Quinn, it can be inferred that all of the parties to the sale intended for the Somersteins and Culnen to shield H&R from any liability arising from Quinn's substantive obligations under ERISA.

Pursuant to Section 5.7 of the Stock Purchase Agreement, Mrs. Somerstein and Culnen, who collectively owned all of the stock in Quinn, "agree[d] to terminate the existing pension plan and make payments necessary to the plan and its participants . . . within 90 days of the Closing Date." Compl., Ex. D, ECF No. 1-6 ("Stock Purchase Agreement"), section 5.7. The

Somersteins and Culnen also agreed to indemnify H&R for "any failure . . . to perform any obligation or duty required to be performed by [them] under any provision of this Agreement." *Id*. at section 10.2.

The Closing Agreement, dated March 13, 2009, required: Marianna Somerstein to deposit $900,000 in the Plan's trustee's account by April 28, 2009 in order to satisfy certain of the Plan's liabilities; both of the Somersteins, who are beneficiaries of the Plan, to execute waivers of their right to any benefits paid by the Plan until Mrs. Somerstein satisfied her obligation to deposit $900,000 to the Plan; and, Mrs. Somerstein, with the assistance of her husband, to terminate the Plan by April 29, 2009 once $900,000 was paid into the Plan to satisfy its liabilities. *See* Compl., Ex. E, ECF No. 1-7 ("Closing Agreement"), section 1(a). The Closing Agreement also called for the Somersteins to waive their right to any benefits in excess of $900,000 following fulfillment of their obligation to contribute $900,000 to the Plan. *Id*.

Plaintiffs allege that the Somersteins "breached the Stock Purchase Agreement and Closing Agreement by failing to make their contractual Pension Plan payment of $900,000." Compl. ¶ 38. They further allege that Mrs. Somerstein failed to abide by her commitment to terminate the Plan. *See id*. ¶ 40. As a result of the asserted contract violations, Plaintiffs contend that the Plan's assets have been substantially depleted. *See id*. ¶ 41.

As a contributing sponsor of the Plan, Quinn remained liable for contributions to the Plan even after it was acquired by H&R. *See* 26 U.S.C. § 412(b). Neither Quinn nor H&R have made any of those required contributions. *See* Reply 6.

By May 2012, approximately three years after H&R acquired Quinn, the Plan's trust account lacked sufficient assets to provide further benefits to covered retirees. *See* Renewed Mot. ¶ 10. On May 22, 2012, the PBGC filed a Notice of Lien against Quinn for approximately

$1.9 million, representing the Plan's outstanding obligations. *See* Pl.'s Mem. L. Opp. To Def.

PBGC Mot. for Partial Dismissal, Feb. 13, 2013, ECF No. 77-4 ("Pl.'s Opp. Mem."), at 1.

On June 8, 2012, in an exercise of its authority to "institute proceedings . . . to terminate a

plan" determined not to have met minimum funding standards, *see* 29 U.S.C. § 1342(a), the

PBGC filed a complaint against Quinn in this court to terminate the Plan, appoint the PBGC as

statutory trustee of the Plan, and establish February 29, 2012 as the Plan's termination date. *See*

Complaint, *Pension Benefit Guaranty Corp., v. Quinn Restaurant Corp.*, No. 12-CV-2881

(E.D.N.Y. June 28, 2012), ECF No. 1. The PBGC was granted all of the relief it requested. *See*

Termination Order and Judgment.

Although the Somersteins executed, as required by the Closing Agreement, waivers that

"*authorize*[] the [Plan's] Trustees to . . . limit . . . benefits due [to them] under the Plan," *see*

Compl. Ex. F, ECF No. 1-8 ("Waivers") (emphasis added), neither Capital One, the Plan's

former trustee, nor the PBGC, the Plan's current trustee, has halted payment of pension benefits

to the Somersteins, *see* Compl. ¶ 41. It is estimated by Plaintiffs that $1.2 million out of the

approximately $1.9 million dollar lien issued by the PBGC represents obligations owed by the

Plan to the Somersteins. *See* Pl.'s Opp. Mem. 1.

When it became clear in June 2010 that the Somersteins would not be terminating the

Plan, Plaintiffs requested the former trustee, Capital One, to cease making Plan payments to the

Somersteins. *See* Compl. ¶ 42. Capital One refused to do so because Plaintiffs would not agree

to indemnify and hold harmless Capital One for liability stemming from any steps taken to

withhold the Somersteins' pension benefits. *See id.* ¶ 45. The Plan's current trustee, the PBGC,

is in the process of investigating whether to refuse future payment of benefits to the Somersteins.

*See* Mot. to Dismiss Tr. 14, Sept. 13, 2012 ("[PBGC Attorney]: . . . [W]e have begun a fiduciary

breach investigation internally."); Renewed Mot. 13-14 ("PBGC takes allegations of fiduciary breach very seriously and is actively investigating Plaintiffs' allegations.").  At present, the PBGC has found Plaintiffs' allegations of breach of fiduciary duty by the Somersteins to be "at least partially belied by documents in Plaintiffs' possession."  Renewed Mot. 13-14.

Plaintiffs initiated the current lawsuit on March 22, 2012.  *See* Compl.  Relying on ERISA, they seek an order (1) enjoining the Plan from paying benefits to the Somersteins, and (2) declaring that no Plaintiff be held liable under ERISA for "the misfeasance and/or malfeasance of the Somersteins and/or any other Defendant." *See* Compl. ¶¶ 46(k); 62(g).  They also seek relief against the Somersteins on a breach of contract claim related to the Stock Purchase Agreement and Closing Agreement.  *See, e.g.*, Compl. ¶¶ 71, 76(a)-(b), 88(b).

### III. Procedural History

On February 28, 2012, the PBGC issued its notice to Quinn of a determination, pursuant to 29 U.S.C. § 1342(a)(1)-(2), that:  the Plan failed to meet its minimum funding requirement as mandated by 26 U.S.C. § 412; the Plan would be unable to pay benefits when due; and, the Plan must be terminated.  *See* Stip. to Voluntarily Dismiss & Stip. Order, Oct. 24, 2012, ECF No. 64 ("Voluntary Dismissal Order").

Plaintiffs filed the complaint in the current lawsuit on March 22, 2012, essentially to shield themselves from liability for any role they played in the Plan's underfunding.  *See* Compl. They requested various forms of relief, including requests:

(1) that the Plan be terminated and the PBGC assume trusteeship, *see* Compl. ¶ 46(j);

(2) for declaratory relief that Plaintiffs are not "responsible for . . . penalties under ERISA attributable to the . . . Somersteins and/or any other Defendant," Compl. ¶ 46(k);

(3) for declaratory relief that Plaintiffs are not "responsible for any excise taxes  . . . attributable to the  . . . Somersteins and/or any other Defendant,"; *id.*

        (4) for declaratory relief that Plaintiffs are not responsible "for any funding requirements in connection with employees of SCL who participated in the Plan;" *id*.

        (5) to enjoin the Plan's trustee from making any benefit payments to the Somersteins "until there is a final determination by the Court of the rights of the Plaintiffs," Compl. ¶ 88(h); and

        (6) for declaratory relief that the Somersteins breached the Stock Purchase Agreement and Closing Agreement and "are contractually obligated to make contributions to the Pension Plan." Compl. ¶ 88(a)-(b).

Plaintiffs demanded a trial by jury on all claims. *See* Compl. ¶ 13.

On June 8, 2012, the PBGC initiated a separate action seeking a judgment and order terminating the Plan and declaring the PBGC statutory trustee. *See* Complaint, *Pension Benefit Guar. Corp. v. Quinn Restaurant Corp.*, No. 12-CV-2881 (E.D.N.Y. June 8, 0212), ECF No. 1. The Miscellaneous Judge on duty issued an Order to Show Cause. *See* Order to Show Cause, *Pension Benefit Guar. Corp. v. Quinn Restaurant Corp.*, No. 12-CV-2881 (E.D.N.Y. June 8, 2012), ECF No. 2.

On June 14, 2012, a Judge of this court issued a judgment and order terminating the Plan, retroactively setting February 29, 2012 as the Plan's termination date, and appointing the PBGC as the Plan's statutory trustee. *See* Judgment, *Pension Benefit Guar. Corp. v. Quinn Restaurant Corp.*, No. 12-CV-2881 (E.D.N.Y. June 14, 0212), ECF No. 10.

On July 30, 2012, defendant PBGC, as statutory trustee and on behalf of the Plan, filed in the instant action a motion to dismiss in part and to strike the jury demand. *See* Motion to Dismiss in Part and to Strike Jury Demand, July 30, 2012, ECF No. 40. The PBGC sought dismissal of plaintiffs':

        (1) claim for the PBGC to terminate and takeover the Plan, on the ground of mootness;

(2) request for a declaratory judgment that they are not responsible for any penalties under ERISA, on the grounds that the claim was not ripe with respect to the PBGC and that Plaintiffs had failed to join a necessary party, the United States Department of Labor, which assesses certain penalties under ERISA;

(3) request for a declaratory judgment that they are not responsible for any excise taxes under ERISA, on the ground of lack of statutory standing; and

(4) request to enjoin the Plan from paying benefits to the Somersteins, based on the lack of statutory standing.

It also sought to have stricken Plaintiffs' demand for a jury.

On September 13, 2012, a hearing was conducted on the PBGC's motion to dismiss and to strike the jury demand. *See* Minute Order, Sept. 13, 2012, ECF No.49. Counsel for Plaintiffs agreed to voluntarily dismiss its claim for termination of the Plan and to strike the demand for a jury. *See* Voluntary Dismissal Order ¶ 8. Jurisdiction over Plaintiffs' request to enjoin future collection of federal excise taxes was denied. *See* Mot. to Dismiss Tr. 19, Sept. 13, 2012. *Accord* 26 U.S.C. § 7421 (prohibiting suits to enjoin the collection of federal taxes); 28 U.S.C. § 2201(a) (providing federal jurisdiction over declaratory judgment actions "*except with respect to Federal taxes*") (emphasis added). With respect to Plaintiffs' claim for a declaration that they are not responsible for any current or future penalties assessed by the PBGC or United States Department of Labor pursuant to ERISA, the PBGC and Plan withdrew their motion to dismiss, without prejudice.

Plaintiffs were granted leave to serve a supplemental complaint naming the United States Department of Labor as a defendant in order to seek relief from any penalties issued by it. *See* Voluntary Stip. ¶ 10.

Pending settlement discussions over Quinn's liability to the PBGC and the Plan, the motion to dismiss Plaintiffs' request to enjoin the Plan from paying benefits to the Somersteins for lack of statutory standing was held in abeyance. *Id*. ¶ 11; *see also* Mot. to Dismiss Tr. 17

("The Court: [A]t the request of the parties, [the court will] hold further action in abeyance while they attempt to reach a resolution.").

Despite extensive negotiations, no settlement has been reached. *See* Renewed Mot. ¶¶ 22-27. Nor have Plaintiffs joined to this litigation the United States Department of Labor.

On November 30, 2013, the PBGC and the Plan submitted a Renewed Motion for Partial Dismissal of Plaintiff's request for an order enjoining payment of benefits to the Somersteins.

The renewed motion was heard on April 9, 2013. *See* Min. Entry, Apr. 9, 2013, ECF No. 98. Following the hearing, supplemental briefing was ordered on issues related to plaintiffs' statutory standing for their ERISA claims, diversity jurisdiction over any state law claims, and any potential statute of limitation or laches defenses. *See* Min. Entry, Apr. 10, 2013, ECF No. 93. Extensive briefing followed. *See* Pls.'s Supp. Mem. L. Opp. to PBGC's Mot. for Partial Dismissal, Apr. 26, 2013, ECF No. 94; Def. Capital One, N.A.'s Supp. Br. in Support of PBGC's Mot. for Partial Dismissal, Apr. 26, 2013, ECF No. 95; Def. PBGC Supp. Br. in Supp. of PBGC's Renewed Mot. to Dismiss, Apr. 26, 2013, ECF No. 96.

## IV. No Cognizable Claim

### A. No Statutory Standing to Pursue ERISA Fiduciary Duty Claims

Plaintiffs lack statutory standing to pursue relief under ERISA against the PBGC, the Plan, Capitol One, and the Somersteins for breach of fiduciary duty. This is the case even assuming the court has the power to issue all of the relief defendants seek. *See Brovarski v. Local 1205, Int'l Brotherhood of Teamsters Union*, No. 97-CV-489, 1998 WL 765141, at 8-10 (E.D.N.Y. 1998) (ERISA anti-alienation policy can be overridden to claw-back or halt payment of benefits from breaching fiduciary to the Plan).

Statutory standing is determined by "whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action." Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*, 62 Okla. L. Rev. 89, 91 (2009). Unlike an inquiry into Article III standing, statutory standing goes beyond whether a court has the power to hear a case and reaches the merits of a claim. *See Bond v. United States*, -- U.S. --, 131 S.Ct. 2355, 2362–63 (2011); *Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1sr Cir. 2012). It is "simply" a matter of statutory interpretation, asking "whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original).

Under section 502 of ERISA, 29 U.S.C. § 1132, only plan participants, beneficiaries, fiduciaries, or the Secretary of Labor may commence an action for breach of a fiduciary duty on behalf of a pension plan. *See* 29 U.S.C. § 1132(a). This list is exclusive. *See Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir.), *cert. denied*, 505 U.S. 1212 (1992). Accordingly, "non-enumerated parties lack statutory standing to bring suit under § 1132(a)(3) *even if they have a direct stake in the outcome of the litigation*." *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir.), *cert. denied*, 537 U.S. 878 (2002) (emphasis added).

Nowhere is it alleged that H&R is or was a fiduciary of the Plan or held any other position that would entitle it to statutory standing under ERISA for a breach of fiduciary claim. While Quinn may have been, as alleged by Plaintiffs, a plan administrator and fiduciary of the Plan following H&R's acquisition of Quinn, its role was extinguished when an order of this court terminated the Plan, effective February 29, 2012, and appointed the PBGC as statutory trustee. *See, e.g.*, *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 637 (1990) ("When a plan

covered under Title IV [of ERISA] terminates with insufficient assets to satisfy its pension obligations to the employees, the PBGC becomes trustee of the plan, taking over the plan's assets and liabilities."). As a *former* fiduciary of the Plan, Quinn lacks *current* standing to assert a claim under ERISA. *See Chemung Canal Trust Co.*, 939 F.2d at 14-15; *accord Ello v. Singh*, 531 F. Supp. 2d 552, 564 (S.D.N.Y. 2007) ("[T]he Second Circuit long ago held that a former fiduciary lacks standing to claim a breach of ERISA's fiduciary duties." (citing *Chemung Canal Trust Co.*)); *Donahue v. Teamsters Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds*, 12 F. Supp. 2d 273, 279 (E.D.N.Y. 1998) (former plan administrator lacked standing to sue as fiduciary); *Int'l Union of Bricklayers and Allied Craftsmen v. Gallante*, 938 F. Supp. 196, 200 (S.D.N.Y. 1996) (trustee who resigned during pendency of suit lacked standing, depriving court of subject matter jurisdiction). *C.f. L.I. Headstart Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, No. 12-2082, -- F.3d --, 2013 WL 950692 (2d Cir. Mar. 13, 2013) (finding former administrator had standing as a fiduciary to assert ERISA claim because it had "a *continuing interest* in protecting Plan assets, which consisted in part of the funds [it] had contributed to the Plan during its participation" (emphasis added)).

Plaintiffs are not among the class authorized by Congress to enforce ERISA. The fiduciary duty claims brought pursuant to ERISA are not ones upon which relief can be granted to the plaintiffs who bring this particular action. They are dismissed with prejudice.

### B. Unavailability of Contribution Claim

Although a former fiduciary lacks standing to bring a claim for breach of a fiduciary duty on behalf of a pension plan, it may pursue contribution claims against co-fiduciaries if it is sued for a breach that occurred during its own tenure as fiduciary. Plaintiffs H&R and Quinn invoke

this principle as an alternative basis for enjoining the PBGC and the Plan from issuing benefit payments to the Somersteins. *See* Pl.'s Opp. Mem. 7; Mot. to Dismiss Tr. 10, Sept. 13, 2012 ("[Plaintiffs' Attorney]: . . . "[O]ur causes of action . . . really seek for contribution indemnification from the Somersteins.").

In *Chemung Canal Trust Co.*, 939 F.2d at 15-16, the Court of Appeals for the Second Circuit expressly recognized such a remedy. The defendant in *Chemung Canal Trust Co.*, a former fiduciary to the ERISA plan at issue, counterclaimed against the plaintiffs—the plan's current fiduciaries—seeking contribution for their role in a breach of fiduciary to the trust. *Id.* at 14. The Second Circuit found a right to contribution under ERISA based on federal common law with reference to common law trust principles. *Id.* at 16.

This right to contribution is an equitable remedy. It is "no more than a procedural device for equitably distributing responsibility for plaintiff's losses among those responsible for the losses," regardless of whom a plaintiff chooses to sue directly for breaching a duty to the pension plan. *Chemung Canal Trust Co.*, 939 F.2d at 15. As an "equitable means of apportioning wrongdoing," ERISA's right to contribution or indemnity is not an independent cause of action to sue for damages. *Id.* at 15-16. *See also Haddock v. Nationwide Fin. Services, Inc.*, 570 F. Supp. 2d 355, 360-61 (D. Conn. 2008) ("Contribution and indemnification are merely allocation mechanisms and do not represent *new causes of action for plaintiffs* under ERISA's civil remedy provision." (emphasis added)); *Alton Memorial Hospital v. Met. Life Ins. Co.*, 656 F.2d 245, 250 (7th Cir. 1981) ("[W]here an ERISA plan suffers losses and *where the plan participants and beneficiaries have established a cause of action on their own behalf or on behalf of the plan assets against one fiduciary*, that fiduciary may seek indemnification or contribution from co-fiduciaries in accordance with 29 U.S.C. § 1105(a)." (emphasis added)). It follows, then, that

this remedy may only be pursued by a party sued for losses suffered by a pension plan. *See, e.g.*, Fed. R. Civ. P. 14(a)(1) ("A *defending party* may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." (emphasis added)).

A third-party contribution claim necessarily is asserted on behalf of—and for the benefit of—the party asserting it. By contrast, an action for breach of fiduciary duty pursuant to 29 U.S.C. § 1109(a) is brought for the ultimate benefit of the trust. *See* 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan *any losses to the plan* resulting from such breach. . . ." (emphasis added)). The proper course to follow when seeking redress on behalf of a pension plan for losses caused by an individual who has defrauded, or breached a fiduciary duty to, the plan is through ERISA's civil remedy provisions—not through contribution. *See In re Joel M. Handel*, 301 B.R. 421, 435 (S.D. Bankr. 2003) ("[T]he courts that have subjected faithless fiduciaries' plan assets to attack have relied on 29 U.S.C. § 1109(a), which gives standing only to beneficiaries, plan fiduciaries, and the plan itself . . . to seek redress for such losses.").

When Congress has been so careful in limiting those parties that have standing and the causes of action they may bring, as it has done with ERISA, rarely should a statute be broadened through general common law or equitable principles. The finding of a right to contribution in *Chemung* should be strictly limited to its facts, where standing to pursue such a remedy was provided to a defendant asserting a counterclaim. Here, the parties seeking contribution are one plaintiff who was never a fiduciary to the Plan and another who was previously a fiduciary to the Plan. They not only ask the court to fashion a new cause of action to enforce ERISA but also to

authorize of a new class of individuals to bring that cause of action. And, even if Plaintiffs had a viable *cause of action* for contribution from the Somersteins, it would be based on pure speculation until or unless an effort is made to collect the PBGC's lien on Quinn.

No court has deemed Plaintiffs liable to the Plan. Accordingly, no claim for contribution can be made.

### C. Jurisdiction Not Exercised Over Request for Declaratory Relief

#### 1. Discretionary Nature of Declaratory Judgment Jurisdiction

Plaintiffs request, pursuant to the Declaratory Judgment Act, 18 U.S.C. § 2201, declarations that they are not "responsible [1] for any . . . penalties under ERISA attributable to the misfeasance and/or malfeasance of the Somersteins and/or any other Defendant, or [2] for any funding requirements in connection with employees of SCL who participated in the Plan." Compl. ¶ 46(k). No current effort to enforce penalties assessed against Plaintiffs or to coerce minimum funding of the Plan by Plaintiffs is alleged. *See* Tr. of Hr'g on Renewed Mot. to Dismiss, Apr. 9, 2013 ("Renewed Mot. to Dismiss Tr."), at 26 ("[Plaintiffs' Attorney]: PBGC is claiming that we owe the plan $1.9 million. . . . It has not yet been adjudicated."). Plaintiffs admit that their request is limited to asking "the court to decide what our responsibilities were with respect to this plan." *Id*. at 20. Despite the court's invitation to do so, Plaintiffs have not served and joined to this lawsuit the United States Secretary of Labor—a necessary party for relief related to certain penalties that could be assessed against Plaintiffs. *Cf.* 29 U.S.C. § 1132(k) (providing federal jurisdiction for actions "to review a final order of the Secretary, to restrain the Secretary from taking any action contrary to the provisions of this chapter, or to compel him to take action required under this subchapter.").

Plaintiffs' reliance on the Declaratory Judgment Act as a means for obtaining declaratory relief does not mean a federal substantive right has been implicated or that a federal cause of action exists. The Declaratory Judgment Act's "operation is procedural only—to provide a form of relief previously unavailable." *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). An underlying federal cause of action is required. *Id.*

The Declaratory Judgment Act states that "any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration." 18 U.S.C. 2201(a). Though not raised in the parties' briefs, it is axiomatic that the Declaratory Judgment Act vests district courts with "*unique and substantial* discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *accord Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 64 (2d Cir. 2012). Placed "in the district court's quiver" is "an opportunity, rather than a duty, to grant [declaratory] relief to qualifying litigants." *Wilton*, 515 U.S. at 288. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* "Among the relevant considerations in exercising discretion [to exercise jurisdiction over a request for declaratory relief] is 'whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved.'" *Peconic Baykeeper Inc. v. Suffolk County*, 600 F.3d 180, 187 (2d Cir.2010) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir.2005)).

Power to decline a declaratory judgment action may be at its highest where an alternative remedy may be achieved through a specific and comprehensive regulatory scheme or where a pending state court action will substantially resolve the issues subject to the request for

declaratory relief.  *See* 10B Wright & Miller, Fed. Prac. & Proc. Civ. § 2758 (3d ed.) ("The court . . . in the exercise of the discretion it always has in determining whether to give a declaratory judgment, properly may refuse declaratory relief if the alternative remedy is better or more effective.").

### 2.  Availability of Special Statutory Proceeding

The comprehensive regulatory scheme embodied in ERISA for the regulation of pensions counsels strongly against an assertion of federal jurisdiction over Plaintiffs' requests for declaratory relief.  Federal Rule of Civil Procedure 57 governs the procedure to be followed in a declaratory judgment action.  It states, in part, that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  Fed. R. Civ. P. 57. Clarified by the Advisory Committee Notes is that "*[a] declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case*, but general ordinary or extraordinary remedies, whether regulated by statute or not, are not deemed special statutory proceedings."  Fed. R. Civ. P. 57 Advisory Committee Notes (1937) (emphasis added).

The "handful of categories of cases [that] have been recognized as 'special statutory proceedings' for purposes of the Advisory Committee's Note" have involved separate and specific sets of "procedures and remedies specifically tailored to a limited subset of cases."  *New York Times Co. v. Gonzales*, 459 F.3d 160, 166 (2d Cir. 2006).  In *New York Times Co.*, the Court of Appeals for the Second Circuit identified three such categories: "(i) petitions for habeas corpus and motions to vacate criminal sentences, (ii) proceedings under the Civil Rights Act of 1964, and (iii) certain administrative proceedings."  *Id.* (internal citations omitted).  In so doing, it held that Federal Rule of Criminal Procedure 17(c)—providing procedures for a court to quash

or issue a subpoena—does not qualify as a "special statutory proceeding" excusing jurisdiction over requests for declaratory relief because "it applies to all federal cases." *Id.*

With respect to Plaintiffs' request for a declaration that it is not responsible for penalties under ERISA, section 502(i) of the statute, codified at 29 U.S.C. § 1132(i), authorizes the Secretary of Labor to "assess a civil penalty against" against a "party in interest" to a pension plan regulated by ERISA. Additional civil penalties may be assessed for violations by fiduciaries to a pension plan, 29 U.S.C. § 1132(*l*), for improper distribution of benefits, 29 U.S.C. § 1132(m), and for the failure of plan administrators to comply with reporting requirements, 29 U.S.C. § 1132(c). For some of these civil penalties, the statute vests the Secretary of Labor with the "sole discretion" to "waive or reduce" them. *See, e.g.*, 29 U.S.C. § 1132(*l*) (3). Beyond Congress's statutory directives, over fifty pages of comprehensive regulations promulgated by the United States Department of Labor provide additional, detailed procedures to be followed when assessing a civil penalty for violation of ERISA. *See* 29 C.F.R. § 2570.1 *et seq.* The regulatory framework provides an opportunity for those assessed with civil penalties to initiate adjudicatory proceedings before an Administrative Law Judge in order to contest any penalty. *Id. See also* U.S. Dep't of Labor, Employee Benefits Sec. Admin., EBSA Enforcement Manual ch. 35, *available at* http://www.dol.gov/ebsa/oemanual/cha35.html (providing guidance for procedure by which civil penalties are enforced under ERISA). The Secretary of Labor is empowered to sue "to collect any civil penalty" provided for by ERISA. 29 U.S.C. § 1129(a)(6).

Plaintiffs' additional request for declaratory relief—i.e., that they are not subject to ERISA's minimum funding requirements—also asks the court to intrude into an area that has been extensively regulated by Congress. ERISA sets minimum funding standards for all covered

plans and provides for tax liens when those standards are not met.  29 U.S.C. §§ 1082, 1083; 26

U.S.C. § 412.  It provides "a specific set of computations that must be made to determine

whether a funding deficiency exists."  *Gastronomical Workers Union Local 610 & Metro. Hotel

Ass'n Pension Fund v. Dorado Beach Hotel Corp.*, 617 F.3d 54, 63 (1st Cir. 2010) (citing 29

U.S.C. § 1082(b)). Procedures provided by ERISA permit plan sponsors to seek waivers from the

Secretary of Labor releasing them of their obligation to meet minimum funding standards for

"substantial business hardship".  *See* 29 U.S.C. § 1082(c).  Provisions also exist that govern the

circumstances under which a plan sponsor's liabilities may be apportioned upon plan

termination.  *See* 29 U.S.C. § 1364.  And, there remains the serious question of whether

Congress conferred the discretion to issue a minimum funding waiver solely on the United States

Secretary of Labor and outside the reach of judicial review.  *Cf. Pinerio v. Pension Ben. Guar.

Corp.*, No. 96 Civ. 7392 (LAP), 1997 WL 739581, at *18 (S.D.N.Y. Nov. 26, 1997) (dismissing

claim against PBGC for its role in denying funding waiver because "no provision of ERISA or

the Internal Revenue Code gives participants standing to challenge a funding waiver").

     Unlike Rule 17 of the Federal Rules of Criminal Procedure, these comprehensive

standards and procedures are not applicable to a broad swath of cases.  They are applicable only

to cases involving ERISA and, for that matter, cases involving the potential breach of duties by

those with significant relationships to pension plans.  These are "procedures and remedies [that

are] specifically tailored to a limited subset of cases."  *New York Times Co.*, 459 F.3d at 166.

Particularly where, as is the case here, Plaintiffs concede that they have not made any attempt to

avail themselves of the special statutory and administrative procedures available, there is no

reason to conclude that declaratory relief should prevail over all other forms.  *Cf. Cutaiar v.

Marshall*, 590 F.2d 523, 527 (3d Cir. 1979) (jurisdiction under Declaratory Judgment Act

properly exercised where "Appellant has stipulated that the contested letter was final and that there was no administrative appeal procedure" (internal quotation marks omitted)); *Richards v. Select Ins. Co., Inc.*, 40 F. Supp. 2d 163, 169 (S.D.N.Y. 1999) ("A declaratory judgment action is premature if standing to maintain such an action depends on a future event that is beyond the control of the parties and that may never occur.").

The court declines to make an end-run around "ERISA's comprehensive legislative scheme." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation marks omitted). *See also HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) ("ERISA is designed to provide comprehensive and uniform regulation of employee benefit plans by imposing requirements for reporting, disclosure and fiduciary responsibility once an employer chooses to provide benefits."). Exercise of jurisdiction over Plaintiffs' request for declaratory relief is denied because of the availability of "a special statutory proceeding." Fed. R. Civ. P. 56 Advisory Committee Notes.

### 3. Interference with Ongoing State Court Action

Jurisdiction over Plaintiffs' requests for declaratory relief is independently declined because of the instant case's substantial relationship to ongoing state court litigation. Well before the instant suit arose, the Somersteins and Culnen brought a breach of contact action in New York State court against H&R, Quinn, and H&R's controlling shareholder. *See* Compl., *Marianna Somerstein, Stuart Somerstein, and Daniel Culnen v. H&R Convention & Catering Corp., Quinn Restaurant Corporation, and Harendra Singh*, No. 26896/2011 (N.Y. Sup. Ct. Queens Cty. Nov. 28, 2011). They alleged—and continue to maintain—failure by H&R, the purchaser of Quinn, to pay nearly two million dollars' worth of notes it issued to Mrs. Somerstein and Culnen to purchase Quinn. *Id.* Plaintiffs in the present suit—H&R and Quinn—

have asserted and maintain counterclaims in the state court action which are essentially identical to their claims in this court. *See* Countercl., *Marianna Somerstein, Stuart Somerstein, and Daniel Culnen v. H&R Convention & Catering Corp., Quinn Restaurant Corporation, and Harendra Singh*, No. 26896/2011 (N.Y. Sup. Ct. Queens Cty. Feb. 6, 2011). The PBGC has intervened in the state court action and is seeking to dismiss any counterclaims preempted by ERISA. *See* Notice of Mot. to Intervene for Limited Purpose of Mot. to Dismiss Certain Counterl., *Marianna Somerstein, Stuart Somerstein, and Daniel Culnen v. H&R Convention & Catering Corp., Quinn Restaurant Corporation, and Harendra Singh*, No. 26896/2011 (N.Y. Sup. Ct. Queens Cty. Mar. 25, 2013).

It is within the court's discretion to dismiss or stay an ongoing federal declaratory judgment action if the state court action will effectively resolve the controversy between the parties. Litigation in federal court that is duplicative of parallel state court litigation belies a federal court's mandate "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The complaint in this action acknowledges that Plaintiffs' request for declaratory relief is connected to "the misfeasance and/or malfeasance of the Somersteins and/or any other Defendant." Compl. ¶ 46(k). That issue is central to both the ongoing State court action and this action. Whether the Somersteins and Culnen breached the Stock Purchase Agreement and Closing Agreement—and their purported obligations to adequately fund and terminate the Plan—will necessarily be decided in the State court action. Sought in that action are damages stemming from any breach, which would cover any liability incurred by Plaintiffs in this action for violating ERISA. Damages requested in this action can be obtained through the parallel litigation proceeding in State court. *See* Renewed Mot. to Dismiss Tr. 21 (representation by

Plaintiffs' counsel that issue of who is responsible for funding the Plan "is a significant issue but it's not the main issue of [the State court action]").

While the State court is admittedly without authority to entertain any challenge to a civil penalty assessed for violating ERISA or to review any minimum funding requirements to which Plaintiffs are subject, the fact that such authority may be vested in the district court is not a sufficient reason to maintain jurisdiction over the declaratory judgment claims. *See* Part IV.C.1, *infra*.

### 4. Jurisdiction Denied for Declaratory Judgment Action

Because the clarification that Plaintiffs seek will be provided through either ERISA's comprehensive administrative procedures or the parties' ongoing State court litigation regarding the sale of Quinn, federal jurisdiction to clarify Plaintiffs' obligations under ERISA and their contract with the Somersteins is needless. It is clear that the parties' State court dispute stems entirely from the sale of Quinn and the parties' respective, agreed-upon course of action following the sale. The waters should not be muddied by federal intervention. Interests of clarity and avoiding insecurity are best served by limiting this dispute to its core issue.

### D. Jurisdiction Not Exercised Over State Law Claims

Plaintiffs' remaining claimed source of relief in this court is through its common law claims against the Somersteins for breach of contract. *See, e.g.*, Compl. ¶¶ 71, 76(a)-(b), 88(b). Because those claims fail to implicate a federal question, jurisdiction may only rest on the diversity of the parties or an exercise of this court's discretionary supplemental jurisdiction over pendent state law claims.

Section 1332 of Title 28 confers federal jurisdiction over cases between (1) "citizens of different States" and (2) "citizens of a State" and "citizens of a foreign State." 28 U.S.C. §

1332(a).  Complete diversity among the parties is required.  *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).

It is undisputed that the Somersteins are domiciliaries of Costa Rica but have not renounced their United States citizenship.  *See* Compl. ¶¶ 3-4; Renewed Mot. to Dismiss Tr. 6, 9. They are, for purposes of diversity jurisdiction, "neither citizens of any state of the United States nor citizens or subjects of a foreign state."  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990).  Their status as United States citizens domiciled outside of the country deprives the court of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *See id.* ("[A] suit by or against a United States citizen domiciled abroad may not be premised on diversity."); *Jordan (Berm.) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, 205 F. Supp. 2d 243, 255 (S.D.N.Y. 2002) (dismissing case for lack of diversity jurisdiction where one among several parties was citizen of the United States and a resident of the United Kingdom).

Supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is declined because the court has dismissed all claims over which original jurisdiction existed and because a parallel proceeding involving the same claims is ongoing in the prior-filed state court action.

## V.  Conclusion

The case is dismissed.

The court expresses no view on the validity of claims and counterclaims pending in State court.  Nor does the court express any view on the merits of any future action brought by the government or its agent to pursue civil penalties against Plaintiffs.

No costs or disbursements are ordered.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: May 8, 2013
      Brooklyn, New York